## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **TARRENCE RODGERS,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| v. | | ) | **CIV-20-282-D** |
| | | ) | |
| 1. | **JUSTICE ALMA WILSON** | ) | |
| | **SEEWORTH ACADEMY, INC.,** | ) | |
| 2. | **JANET GRIGG, in her individual** | ) | |
| | **capacity as Director and Board Clerk** | ) | |
| | **of Justice Alma Wilson Seeworth** | ) | |
| | **Academy, Inc.,** | ) | |
| 3. | **BARBARA SWINTON, in her** | ) | |
| | **individual capacity as a Board** | ) | |
| | **Member of Justice Alma Wilson** | ) | |
| | **Seeworth Academy, Inc.,** | ) | |
| 4. | **P. KAY FLOYD, in her** | ) | |
| | **individual capacity as a Board** | ) | |
| | **Member of Justice Alma Wilson** | ) | |
| | **Seeworth Academy, Inc.,** | ) | |
| 5. | **PATRICIA KELLEY, in her** | ) | |
| | **individual capacity as a Board** | ) | |
| | **Member of Justice Alma Wilson** | ) | |
| | **Seeworth Academy, Inc.,** | ) | |
| 6. | **BEVERLY PATCHELL, in her** | ) | |
| | **individual capacity as a Board** | ) | |
| | **Member of Justice Alma Wilson** | ) | |
| | **Seeworth Academy, Inc.,** | ) | |
| 7. | **JOHN MAYFIELD in his individual** | ) | |
| | **capacity as a Board Member of** | ) | |
| | **Justice Alma Wilson Seeworth** | ) | |
| | **Academy, Inc., and** | ) | |
| 8. | **LEE ANNE WILSON, in her** | ) | |
| | **individual capacity as a Board** | ) | |
| | **Member of Justice Alma Wilson** | ) | |
| | **Seeworth Academy, Inc.,** | ) | |
| | | ) | **Jury Trial Demanded** |
| | **Defendants.** | ) | **Attorney Lien Claimed** |

1

## COMPLAINT

**COMES NOW** the Plaintiff, Tarrence Rodgers, and for his Complaint against the Defendants would herein allege and state as follows:

## PARTIES

1.      Plaintiff, Tarrence Rodgers, is a Black, American Indian (Muskogee Creek), male residing in Oklahoma County, Oklahoma.

2.      Defendants are:

a.      Justice Alma Wilson Seeworth Academy, Inc., an entity that did business in Oklahoma County, Oklahoma (hereinafter referred to as "Seeworth");

b.      Janet Grigg, in her individual capacity, who at all relevant times was the Director/Superintendent and Board Clerk of Seeworth;

c.      Barbara Swinton, in her individual capacity, who at all relevant times was member of the Board of Directors of Seeworth;

d.      P. Kay Floyd, in her individual capacity, who at all relevant times was member of the Board of Directors of Seeworth;

e.      Patricia Kelley, in her individual capacity, who at all relevant times was member of the Board of Directors of Seeworth;

f.      Beverly Patchell, in her individual capacity, who at all relevant times was member of the Board of Directors of Seeworth;

g.      John Mayfield, in his individual capacity, who at all relevant times was member of the Board of Directors of Seeworth; and

h.      Lee Anne Wilson, in her individual capacity, who at all relevant times was member of the Board of Directors of Seeworth.

3.      Each of the individual Defendants is/was an officer, board member, and/or employee of the Justice Alma Wilson Seeworth Academy, Inc. at all relevant times hereto, and the individuals were acting under the color of their authority at all pertinent times hereto.

## JURISDICTION AND VENUE

4.      This is a cause of action based on: (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (b) violations of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"), including disability discrimination, failure to accommodate and retaliation for requesting reasonable accommodations; (c) violations of the Family Medical Leave Act ("FMLA"), including FMLA interference and retaliation; (d) race discrimination in violation of Title VII; (e) race discrimination in violation of 42 U.S.C. §1981; (f) violation of Plaintiff's First Amendment right to freedom of speech and freedom of association made actionable by 42 U.S.C. §1983; (g) wrongful termination in the form of a *Burk* tort; (h) workers' compensation retaliation; (i) tortious interference with a contract; (j) tortious interference with a prospective economic advantage; (k) negligent supervision, training and retention; (l) conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. §1983; (m) violations of Plaintiff's rights

3

under 42 U.S.C.§1985(3); and (n) violation of the Open Meetings Act.

5.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.   This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

6.      To the extent required, Plaintiff exhausted his administrative remedies. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 12, 2019.  Thereafter, he received his Notice of Right to Sue dated March 3, 2020. Plaintiff also submitted a Governmental Tort Claim Notice on or about July 11, 2019.  Plaintiff received no response, therefore, his tort claim was deemed denied on or about October 9, 2019.  And, Plaintiff has timely filed his Complaint within one hundred eighty (180) days from the date said tort claim was deemed denied.

7.      All acts complained of herein occurred in and around Oklahoma County, Oklahoma.  Oklahoma County is located within the Western District for the United States District Courts of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391.

### STATEMENT OF FACTS

8.      Plaintiff, who was born in 1970, dedicated approximately seventeen (17) years of employment to Seeworth.  Through hard work, dedication, and exemplary performance, he rose through the ranks, but was ultimately later cast aside and wrongfully terminated.

9.      Plaintiff started as a Security Officer in or around 2002, and achieved several

promotions thereafter. He was promoted to an Assistant Principal in or around 2004 and worked in this position for approximately seven (7) years until in or around 2011. He was then promoted to a High School Site Principal position, which he held for the remaining eight (8) years of employment until on or about May 17, 2019.

10.    Throughout his lengthy tenure, Plaintiff was an outstanding employee. In addition to receiving multiple promotions, Plaintiff was frequently complimented on his performance. He was highly regarded by his peers and students. He received pay raises and performance bonuses. And, he was not written up prior to his termination.

11.    Despite his stellar work record, Plaintiff was wrongfully terminated on or about May 17, 2019 (before his 2018-2019 contract expired). Plaintiff was not given any reason for his termination. Plaintiff was simply given a letter from Defendant Wilson, stating his contract of employment was being terminated effective May 17, 2019.

12.    Significantly, prior to being fired, Plaintiff requested leave and other accommodations in connection with physical impairments from which he suffered. He also complained about certain safety risks to students, as well as financial improprieties. And, on or about March 4, 2019, Plaintiff's wife, Shari Rodgers, who was a contract consultant with Seeworth, submitted a letter to the Board of Directors (Defendants Swinton, Floyd, Kelley, Patchell, Mayfield and Wilson), through then-Board Chairperson Swinton, complaining about additional issues of public concern, including that Seeworth was misusing public funds.

13.    More particularly, in or around 2017, Plaintiff, who suffers from a back condition, was required to undergo surgery for placement of a spinal stimulator.

14.    In or around August 2017, he also suffered an on the job injury to his shoulder, requiring he file a workers' compensation claim and take leave on occasion for medical care.

15.    Plaintiff also suffered/suffers from high blood pressure and diabetes, which required he occasionally take leave to seek medical treatment.

16.    Despite this, at no time was Plaintiff told of his rights under the FMLA.

17.    In light of his medical conditions, Plaintiff is/was a qualified individual with a disability, in that, his conditions substantially limited/limit his ability to perform one or more major life activities.  Specifically, his back and shoulder impairments substantially limit/limited his ability to lift, push, pull and perform certain manual tasks.  Likewise, his diabetes and high blood pressure substantially impair/impaired his ability to perform one or more daily life activities, including *inter alia* his ability to eat.  And, his diabetic condition is also specifically recognized as an impairment under the ADA.

18.    His conditions further impacted/impact his internal bodily processes, including, but not limited to his musculoskeletal system, circulatory, neurological and digestive systems.

19.    Plaintiff also has a record of such impairments and/or was regarded as having such impairments.  At all relevant times though, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations.

6

20.    As a result of his medical conditions, Plaintiff asked Grigg in or around 2017 if he could work on a nine (9) month contract, rather than a twelve (12) month contract, explaining that his medical conditions were exacerbated by the manual work he was charged with during the summer.  Grigg said she could not change Plaintiff's work calender, that she would have to ask the Board.  Plaintiff asked if he could speak to the Board, but Grigg said she would "take care of it."

21.    Thereafter though, in or around January 2018, the Board (including Swinton, Floyd, Kelley, Patchell and Wilson) voted to deny Plaintiff's request for accommodation. No interactive process was engaged in to discuss any other accommodations that could be provided to Plaintiff.

22.    Instead, Grigg told Plaintiff that he should apply for partial disability, to cover part of his pay, but which would require Plaintiff to remain working 12 months, full-time (i.e., directing him to commit insurance fraud).  Plaintiff refused to do this.

23.    Further, in or around the 2017-2018 school year, Plaintiff complained to Grigg about certain student safety issues with which he was concerned.  Specifically, he requested that a vacant security officer position be filled.  However, Grigg became enraged, angrily saying Seeworth did not have enough money to fill the position and sarcastically questioned who should be fired in order to fill the position.

24.    In or around late-2017, Plaintiff also expressed concern that Seeworth was mishandling public funds.  Plaintiff and his wife told Board Member Greg Dewey that they

did not believe proper cash handling procedures were being followed. They further suggested that the corporate account be audited and reported concerns that Grigg only worked on campus one to two partial days per week, if at all. However, no action was taken to remedy their stated concerns.

25.     Upon information and belief, Dewey told other members of the Board about Plaintiff and his wife's complaints of financial malfeasance.

26.     Grigg, too, had knowledge of Plaintiff and his wife's complaints, as she told Plaintiff in or around the Spring 2018 that she heard Plaintiff and his wife talked to Dewey about concerns with school funds being mishandled.

27.     Moreover, on or about March 4, 2019, Plaintiff's wife submitted a Notice of Concern to the Board, detailing her concerns (which Plaintiff shared) that school funds were not being handled in accordance with federal and state laws and regulations.

28.     Despite the gravity of the concerns raised in the letter, no investigation was pursued by the Board. In fact, on or about March 10, 2019 – less than one week after submitting the letter – Swinton sent Plaintiff's wife an email, simply stating she should not have any concerns that the funds were being mishandled.

29.     Upon information and belief, Swinton provided a copy of the whistleblowing letter to Grigg despite the fact that Plaintiff's wife made clear in her letter that she was in fear of retaliatory actions being taken. And, rightfully so.

30.     Grigg terminated Seeworth's contract with Plaintiff's wife on April 9, 2019.

31.    And, Plaintiff was fired on or about May 17, 2019.

32.    However, even before Plaintiff was fired, Grigg began treating him as an outcast.  She excluded him from meetings he normally attended.  She had a padlock placed on a supply closet door attached to Plaintiff's office without his knowledge and without providing him a key.  She re-keyed the building in which Plaintiff worked without giving him advance notice or a key.  She failed to timely provide Plaintiff his payroll check.  She edited the written program for the eighth grade graduation, removing Plaintiff's name from the administration listing.  And, she instructed that Plaintiff not be allowed to participate in the Senior Trip.  And, she told Plaintiff's wife and staff that he engaged in alleged personal indiscretions.

33.    Grigg told staff that Plaintiff and his wife were trying to "take over the school." And, a staff member began asking others, "whose team are you on, team Grigg or team Rodgers."

34.    On or about April 23, 2019, Plaintiff submitted a letter via email to the Board (including Swinton, Floyd, Kelley, Patchell, Mayfield and Wilson), stating he felt he was being retaliated against due the concerns he and his wife raised regarding the practice undertaken by Seeworth via Grigg.

35.    Despite his letter, no remedial action was taken.  Rather, Plaintiff was fired on or about May 17, 2019.

36.    Significantly, Plaintiff is not the only one to have been fired on the heels of

complaining that Seeworth (via Grigg) was misusing public funds.

37.     In fact, Grigg had a history of financial malfeasance.  And, the Board (including Swinton, Floyd, Kelly, Patchell, Mayfield and Wilson) knew this.

38.     Indeed, approximately eight (8) years earlier, former-Principal Mongo Allen told the Board (including Swinton, Floyd, Kelly, Patchell, Mayfield and Wilson) during a meeting on or about June 21, 2011, that Grigg was misusing government funds.

39.     She instructed employees who were on-the-clock, including Plaintiff and former-Principal Mongo Allen, being paid by Seeworth, to do her personal business, such as moving her personal furniture and clothing to a storage unit.  She also instructed Allen to shred receipt books used for recording concession stand and t-shirt sales for Seeworth, which Allen declined to do.

40.     During the June 21, 2011 meeting, Allen (who is Black) also complained that he and other non-White employees were discriminated against due to their race and that Grigg prohibited him from filing a workers' compensation claim.  Yet, the Board's only response was to ask Allen if he perceived any of his actions as insubordinate.  He was then fired the next day, on or about June 22, 2011.  And, Allen filed a lawsuit against Seeworth, Grigg and the Board (including Swinton, Floyd, Kelley, Patchell, Mayfield and Wilson) on January 26, 2012.  *See Allen v. Justice Alma Wilson Seeworth Academy, Inc.*, CIV-12-93-M.

41.     Upon information and belief, Grigg, along with the Board (including Swinton, Floyd, Kelley, Patchell, Mayfield and Wilson) collectively made the decision to terminate

Plaintiff's employment.

42.    In addition, Defendants failed to follow requirements under the Open Meeting Act.  Notice of meetings were not timely posted, if posted at all.  Moreover, unless specifically invited, staff and others were not allowed to attend Board meetings.  Indeed, as noted above, Plaintiff was not allowed to meet with the Board in or around January 2018.

43.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

### COUNT I: ADEA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44.    This count is asserted against Defendant Seeworth.

45.    The matters alleged above constitute violations of the ADEA in the form of age discrimination.

46.    Plaintiff is entitled to relief under the ADEA because he was over the age of forty (40), was qualified for his job, was discharged and his job was not eliminated after his termination.

47.    As a direct and proximate result of Defendant Seeworth's actions, Plaintiff has suffered injuries and is entitled to recover all damages, including *inter alia* lost income, past and future, liquidated damages, based on Defendant's willful violation of the ADEA, and all other damages allowed by the Civil Rights Act of 1991.

## COUNT II: ADA/ADAAA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

48.     This count is asserted against Defendant Seeworth.

49.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or a perceived disability in violation of the ADA and ADAAA.

50.     More specifically, Plaintiff was a qualified individual with a disability, in that, he suffers from physical impairments (i.e., high blood pressure, diabetes, and a shoulder and back impairment) which substantially limits his ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disabilities impact one or more of his internal bodily processes, as shown herein.

51.     Despite said impairment, Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodations.

52.     Defendant denied Plaintiff reasonable accommodations. Defendant also failed to engage in an interactive process to determine other reasonable accommodations that could be provided to Plaintiff.  And, Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

53.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

54.     Because the actions of Defendant were willful, wanton or, at the least, in

12

reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III:  FMLA

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

55.    This count is asserted against Defendants Seeworth, Swinton, Floyd, Kelley, Patchell, Mayfield and Wilson.

56.    The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the FMLA.

57.    Plaintiff was entitled to medical leave because he worked for Defendant Seeworth, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

58.    Defendants interfered with Plaintiff's rights under the FMLA by failing to notify Plaintiff of his FMLA rights.

59.    Defendants also retaliated against Plaintiff for his use of FMLA leave by *inter alia* wrongfully terminating his employment in response to Plaintiff's exercise of his rights under the FMLA.

60.    As a direct and proximate result of Defendants' willful conduct, Plaintiff suffered injuries and is entitled to recover all damages or other equitable relief allowed by law, including, but not limited to, lost wages, past and future, liquidated damages, based on

13

the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT IV: 42 U.S.C. § 1981

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

61.    This count is asserted against all Defendants.

62.    The matters alleged above constitute violations of 42 U.S.C. § 1981, in the nature of race-based discrimination.

63.    Plaintiff is entitled to relief for race discrimination because he is Black and American Indian (Muskogee Creek), he was qualified for his job, he was terminated from his employment, and his job was not eliminated.

64.    As damages, Plaintiff has suffered lost earnings, past and future, and emotional distress.

65.    Because the actions of the individually-named Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991 and 42 U.S.C. §1981.

## COUNT V: Title VII

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

66.    This count is asserted against Defendant Seeworth.

67.    The matters alleged above constitute violations of Title VII of the Civil Rights

14

Act of 1964, in the nature of race discrimination.

68.     Plaintiff is entitled to relief for race discrimination because he is Black and American Indian (Muskogee Creek), he was qualified for his job, he was terminated from his employment, and his job was not eliminated.

69.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by law.

70.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991 and 42 U.S.C. §1981.

### COUNT VI:  First Amendment

For his sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

71.     This count is asserted against all Defendants.

72.     The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of his constitutional right to the freedom of speech and association.

73.     The matters alleged above were in violation of Plaintiff's First Amendment right to the freedom of speech which was clearly established at the time of the actions in question.  Plaintiff's comments as stated herein constitute protected comments on matters of public concern.  The actions of the Defendants were in deliberate indifference to the

constitutional rights of Plaintiff. Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

74.    The matters alleged above represent violations of Plaintiff's rights under the First Amendment, *inter alia*, which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

75.    To the extent that the actions of any individual are deemed willful, wanton or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

### COUNT VII: *Burk* Tort

For his seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

76.    This count is asserted against Defendant Seeworth.

77.    The acts described above constitute a violation of Oklahoma's public policy, which prohibits wrongful termination and retaliation against whistle-blowers for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

78.    More particularly, Plaintiff was wrongfully discharged from his employment in retaliation for exercising his right to engage in Free Speech and for having acted

16

consistently with a clear and compelling public policy to report and complain certain student safety issues and about misuse of public funds as articulated in this state's decisional and statutory law, including *inter alia* Okla. Stat. tit. 10A §1-1-102 ("it is the policy of the state to provide for the protection of children"); *United States ex rel. Williams v. City of Elk City*, 2009 WL 10675671, *3 (W.D. Okla. Feb. 18, 2009) ("[e]stablished public policy restrains and forbids …misusing public funds[.]"); *Brewer v. Baptist's Inc.*, 2013 WL 5000933, *2 (W.D. Okla. Feb. 11, 2013) (recognizing allegations of "misuse of public funds" sufficient to support plausible *Burk* claim).

79.     Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages, punitive damages, costs and attorney's fees.

## COUNT VIII: Workers Compensation Retaliation

For his eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

80.     This count is asserted against Defendant Seeworth.

81.     The matters alleged above constitute retaliation in violation of the Oklahoma Administrative Workers' Compensation Act.

82.     Plaintiff sustained a job-related injury for which he asserted a claim for benefits under the Administrative Workers' Compensation Act.  Plaintiff received medical treatment for such injury.  Defendant Seeworth had knowledge of Plaintiff's work-related injury.  And,

Plaintiff was consequently fired.

83.    As a direct and proximate result of Defendant Seeworth's actions, Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages emotional distress and other non-pecuniary losses.

## COUNT IX: Tortious Interference

For his ninth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

84.    This count is asserted against Defendants Grigg, Swinton, Floyd, Patchell, Mayfield and Wilson.

85.    The acts above-described constitute unlawful tortious interference with a contractual/employment relationship.  Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant Seeworth.  Defendants had no justification, excuse, or privilege for such interference.

86.    Defendants knew or should have known of Plaintiff's employment relationship and expectancy of continued employment with Defendant Seeworth.

87.    Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson made the final decision to wrongfully terminate Plaintiff's employment based on his age, disability, race, workers' compensation claim, use of FMLA-qualifying leave, and for complaining of certain unlawful activities set out above.  As such, Defendants Grigg, Swinton, Kelley,

Patchell, Mayfield and Wilson interfered with the employment relationship and expectation of continued employment Plaintiff had with Defendant Seeworth.

88.     The actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were intentional, malicious and wrongful.  Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were not acting to serve any legitimate or lawful interest of Defendant Seeworth, but were pursuing their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federally protected rights.

89.     Defendants' actions, in addition to not being legitimate, were not justified or privileged.

90.     As a result, Plaintiff is entitled to all damages allowed by state law.  Moreover, because the actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT X: Interference with Prospective Economic Advantage

For his tenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

91.     This count is asserted against Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson.

92.     The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

19

93. Plaintiff had a reasonable expectation for profit in his employment with Defendant Seeworth.

94. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson had knowledge of this relationship and/or expectancy.

95. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson intentionally induced or caused a breach Plaintiff's expectancy.

96. Such breach resulted in damage to Plaintiff.

97. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson made the final decision to wrongfully terminate Plaintiff's employment based on his age, disability, race, workers' compensation claim, use of FMLA-qualifying leave, and for complaining of certain unlawful activities set out above. As such, Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson interfered with the employment relationship and expectation of continued employment Plaintiff had with Defendant Seeworth.

98. The actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were intentional, malicious and wrongful. And, Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson had no justification, excuse or privilege for their actions.

99. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were not acting to serve any legitimate or lawful interest of Defendant Seeworth, but were pursuing their own personal motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federally protected rights.

20

100. Plaintiff suffered damages as a direct result of the actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson. And, such damage was proximately sustained as a direct result of the complained-of interference.

101. As a result, Plaintiff is entitled to all damages allowed by state law. Moreover, because the actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT XI: Negligence

For his eleventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

102. This Count is asserted against Defendant Seeworth.

103. The acts of Defendant Seeworth as described above constitute the tort of negligent training, retention, and supervision.

104. Defendant Seeworth had a duty to properly supervise and train its employees to refrain from engaging in unlawful acts, including but not limited to discrimination and retaliation.

105. Defendant Seeworth breached its duty.

106. At the critical time of the tortious incidents described herein, Defendant Seeworth knew or should have known its employees, including but not limited to Defendant Grigg, would create an undue risk of harm to others.

107. As a direct and proximate cause of Defendant Seeworth's negligence, Plaintiff was harmed.

108. As damages, Plaintiff is entitled to all damages allowed by state law.

## COUNT XII: Conspiracy

For his twelfth cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

109. This Count is asserted Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson.

110. The actions above-described constitute a claim for conspiracy under §1983.

111. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson conspired to deprive Plaintiff of his constitutional rights. Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson collectively decided to terminate Plaintiff and deprived him of his constitutional right to engage in free speech and association.

112. The actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

113. Because the actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT XIII: 42 U.S.C. §1985(3)

22

For his thirteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and state as follows:

114.    This Count is asserted Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson.

115.    The actions above-described constitute violations of Plaintiff's rights under 42 U.S.C.§1985(3).

116.    Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson conspired to deprive Plaintiff of his rights to equal protection and equal privileges;

117.    As shown herein, Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson acted in furtherance of the conspiracy.

118.    The actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

119.    Because the actions of Defendants Grigg, Swinton, Kelley, Patchell, Mayfield and Wilson were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT XIV: Open Meetings Act

For his fourteenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

120.    This Count is asserted Defendant Seeworth.

121.    The acts described above constitute a violation of the Open Meetings Act ("OMA"), Okla. Stat. tit. 25 §301, *et seq.*, including the requirement that advance notice be given of meetings.

122.    Pursuant to Okla. Stat. tit. 25 §314, Plaintiff requests declaratory relief in the form of an order declaring Defendants Seeworth violated the OMA.

123.    Plaintiff further requests the Court award Plaintiff him reasonable attorneys fees pursuant to Okla. Stat. tit. 25 §314.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 30th DAY OF MARCH, 2020.**

**s/Jana B. Leonard**
**JANA B. LEONARD, OBA #17844**
**SHANNON C. HAUPT, OBA #18922**
**LEONARD & ASSOCIATES, P.L.L.C**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800 [TELEPHONE]**
**(405) 239-9801 [FACSIMILE]**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**